<table>
<tr><td>

**IN THE UNITED STATES DISTRICT COURT<br>FOR THE WESTERN DISTRICT OF ARKANSAS<br>FAYETTEVILLE DIVISION**

</td><td>

FILED<br>US DISTRICT COURT<br>WESTERN DISTRICT<br>OF ARKANSAS<br>Nov 1, 2018<br>OFFICE OF THE CLERK

</td></tr>
</table>

**TAYLOR WILSON, SPECIAL ADMINISTRATOR OF THE ESTATE OF RANDY WARREN WILSON, Deceased**
     **Plaintiff**

v.       Case No. 5:18-CV-_____   18-5217

**LUXOTTICA RETAIL NORTH AMERICA, Inc. d/b/a LENSCRAFTERS**
     **Defendant**

## COMPLAINT

Taylor Wilson, Special Administrator of the Estate of Randy Warren Wilson, Deceased[1][2] comes before this Court and for his Complaint against Luxottica Retail North America, Inc. d/b/a Lenscrafters (hereinafter "Lenscrafters") states and alleges:

## INTRODUCTION

The Plaintiff brings this action to remedy discrimination based upon disability in violation of Title I of the Americans With Disabilities Act as amended, 42 U.S.C. §12111, et seq and the Arkansas Civil Rights Act of 1993, A.C.A. 16-123-101, et. seq. against Lenscrafters to remedy the discrimination based upon Randy Warren Wilson's ("Wilson") disability; and for a permanent injunction prohibiting the Defendant from engaging in practices and policies alleged herein. Plaintiff seeks full back pay for time missed as the result of Defendant's discriminatory actions against Plaintiff, benefits, front pay, compensatory and punitive damages, liquidated damages, prejudgment and post judgment interest, reasonable attorney's fees and expenses, and any and all other relief to which it is entitled as the victim of discrimination predicated upon disability. The

---

[1] See Exhibit A, Appointment of Special Administrator by Washington County, Arkansas Probate Court.
[2] See *Guenther v. Griffin Constr. Co.*, 846 F.3d 979, 982-83 (8th Cir. 2017) holding that Americans with Disabilities Act claims survive death of claimant.

Plaintiff further seeks a declaratory judgment declaring that Lenscrafters discriminated against Wilson by terminating Wilson without providing accommodations that would have allowed for Wilson to continue in the performance of his work for Lenscrafters.

Finally, the Plaintiff seeks redress for Lenscrafters' retaliation against Wilson after Wilson lodged complaints related to Lenscrafters' practices alleged to be in violation of the Arkansas Board of Dispensing Opticians Rules, specifically those prohibiting "capping and steering". Such a practice, and subsequent retaliation, is also alleged to have been in violation of the False Claims Act, 31 U.S. Code § 3729-3733, and the Stark Law, 42 U.S.C. § 1395nn, prohibiting physician self-referral and for which complaints constitute protected activity under the False Claims Act, 31 U.S. Code § 3730(h).[3]

## JURISDICTION

1. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 1343(3) and (4), 42 U.S.C. §12117(a), 42 U.S.C. §2000, *et. seq.*, and 31 U.S. Code § 3732. The Plaintiff also seeks a permanent injunction and a declaratory judgment under 28 U.S.C. §§2201 and 2202 declaring that the Defendant(s) discriminated against Wilson by their actions taken against him due to his disability and retaliated against him for objecting to unlawful referral practices. This Court also has jurisdiction over the Plaintiff's claims under the Arkansas Civil Rights Act and Arkansas common law pursuant to the plenary power of the Court to invoke its pendant jurisdiction over causes of action arising under the laws of the State of Arkansas.

2. Venue herein is proper under 28 U.S.C. §1391(b), and the alleged unlawful employment practices were committed within the State of Arkansas, in the Western District

---

[3] The retaliation claims should also survive Mr. Wilson's death. An employment discrimination claim, coupled with prayers for lost wages, is akin to a contract claim in that there was a breach of contract by wrongful discharge. See *Hill v. Winn-Dixie Stores, Inc*., 934 F.2d 1518, 1524 (11th Cir 1991); *Pons v. Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977); *Cheverly v. Western Electric Co*., 69 F.R.D. 348, 350 (W.D. Mo. 1975) (analyzing an award of back pay for Seventh Amendment purposes). See also, *McDonald v. Pettus*, 988 S.W.2d 9, 16 (Ark. 1999) "From the plain language of [Arkansas Code Annotated Section 28-49-104] of the probate code and our supporting case law, it is clear that a representative, administrator, or executor of an estate may bring a tort, contract, or property-recovery action after the decedent's death."

thereof and that at the time of the discrimination Randy Wilson was a resident of Washington County, Arkansas.

3.  Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination based upon disability against Lenscrafters. A true and correct copy of the EEOC Charge filed related to this case is attached as Exhibit "B".

4.  The Equal Employment Opportunity Commission issued to Wilson a Right to Sue Letter on the disability discrimination charge on or about August 3, 2018 for the charge (received on August 6, 2018). A true and correct copy of the EEOC Right to Sue Letter related to this case is attached as Exhibit "C".

5.  Lenscrafters may claim that this dispute should be brought pursuant to an alleged, enforceable, arbitration agreement. The Plaintiff maintains that, Lenscrafters has waived its rights thereunder by its failure, for more than sixteen months to produce the same to Wilson after his requests in conjunction with the underlying EEOC claim.[4]

**PARTIES**

6.  Plaintiff Taylor Wilson, Special Administrator of the Estate of Randy Warren Wilson, deceased, is the appointed special administrator (See Exhibit A) of the deceased former employee of Lenscrafters, who at all times relevant hereto, was a citizen of the United States and resident of Washington County, Arkansas.

7.  Prior to his termination of employment, Wilson was diagnosed with cancer, and is therefore a protected person within the meaning of Title I of the Americans with Disabilities Act and the Arkansas Civil Rights Act.

---

[4] See *Tyson Foods, Inc. v. Don Davis* 347 Ark. 566, 66 S.W.3d 568 (2002). "The meaning of waiver has provoked much discussion. Although it has often been said that a waiver is "the intentional relinquishment of a known right," this is a misleading definition. What is involved is not the relinquishment of a right and the termination of the reciprocal duty but the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty." *Id.* Citing E. Allan Farnsworth, *Farnsworth on Contracts* § 8.5 at 540-541 (3rd ed. 1999) (footnotes omitted).

8. At all times relevant, Defendant, Luxottica Retail North America, Inc. (Lenscrafters) was a foreign for-profit corporation doing business in the state of Arkansas. Its registered agent for service of process is National Registered Agents, Inc. of AR, 124 W Capitol Ave, Ste 1900 Little Rock, AR 72201.

**STATEMENT OF FACTS**

9. During the relevant period for purposes of the Americans with Disabilities Act and Arkansas Civil Rights Act, Lenscrafters has employed over 500 employees.

10. Wilson was hired by Lenscrafters in 1997.

11. Over the course of nearly 20 years, Wilson was a dedicated employee to Lenscrafters with no related history of performance or disciplinary issues.

12. At the time of his termination, Wilson was the General Manager of Store #0716, located at the Northwest Arkansas Mall in Fayetteville, Arkansas.

13. He had held that position since January 1, 2004.

14. As part of the performance of his job, Wilson received annual reviews.

15. The lowest review he received (prior to 2016) was a "two" on a scale of one through five. Apparently, this was due to a communication issue between his store and the regional manager. Once they became aware of the issue it was quickly resolved to the regional manager's approval. This review was roughly seven years prior to Wilson's termination. To wit, excepting 2016 and the single review mentioned herein, all other reviews he received during the past twenty years were between a three and a five.

16. In the past, Mr. Wilson had been recognized by Lenscrafters as the "General Manager of the Year" and rated as a top performer as to plan and growth in the Fayetteville store's zone.

17. Over the course of his career, Mr. Wilson traveled from store to store in several different states to assist in the development and training of store managers and associates while also assisting the staffing of stores that were understaffed.

4

18. Mr. Wilson has also been a simultaneous multiple store manager (Lenscrafters and Sunglass Hut) with success in each store.

19. Mr. Wilson was a state licensed optician and maintained his license for over thirty years. His responsibility as licensed optician was to ensure the dispensary followed laws and regulations put forth by the Arkansas State Board of Opticians.  For reference, see the Arkansas Board of Opticians Rules, found at https://abdo.arkansas.gov/pdf/rules2013.pdf .

20. Prior to his termination, Kathleen Olivastro had been Wilson's Regional Managers for more than five years.

21. To wit, during that length of time, Wilson received less than six or seven visits with her in person. Her absence was unusual as the store was accustomed to "Regional" visits a minimum of once per quarter to review and evaluate store and associate performance and compare the store with quarterly and annual goals set forth by the company.

22. Olivastro would often (via phone) share with store management she was not ignoring them by her few number of visits, but that the store operated so well, she had other stores that needed her attention more.

23. In February 2016, Olivastro replaced the optometrist next door in the NWA Mall. To wit, that office was also affiliated with Luxottica. The new optometrist told all associates at Lenscrafters that they were to transfer all calls or walk-in needs that requested a recommendation for an optometrist to his office only.

24. They were also told to not give out the previous optometrist's number even upon request by his previous patients, which Wilson believed to be in violation of the medical code of ethics, Arkansas law, and public policy. Wilson shared with Kathleen his concerns, and that of his staff, that the requests of the new optometrist were not within the boundaries of opticianry laws, as well as that the optometrist's closing on Sunday, along with his reduction of hours to three and one-half per day, four days per week, would be detrimental to business compared with an availability seven days per week.

25. Olivastro's response was that Wilson, and his staff, were to fully cooperate with optometrist's requests or be terminated. There was no other option, nor was there any further reporting procedure explained to Wilson.

26. Wilson was then given daily goals for exams scheduled and requested to know the percentage of exams scheduled that were delivered to Lenscrafters to purchase eyeglasses.

27. In early June 2016, Olivastro arrived in store and asked Wilson to the mall food court where she delivered a corrective action plan indicating he was not in full cooperation with the optometrist's requests of policies and procedures.

28. Wilson shared that he and other staff members thought some of these actions were in conflict with "capping and steering" laws, but if noncompliance meant termination, he would comply and expect compliance from store staff. From that point, Wilson never received follow up on the corrective action around my performance or compliance of procedures.

29. While Wilson's complaints were focused on Capping and Steering laws related to opticianry licensing, it is also believed that such practices of which Wilson complaint are protected by the False Claims Act, as cited herein, and the Stark Law, which prohibit certain physician self-referral.

30. In July, Wilson went on emergency medical leave for colon cancer which required four major surgeries. He continued to receive store and regional sales results while on leave through e-mail and would call the store as he was able to and check on complying to all email requests.

31. Wilson received a certified letter from Wilma Mitchell which was carbon copied to Olivastro and Kevin Cohen four weeks after his last surgery, while he was still on leave.

32. It indicated that if he didn't return to work immediately, he would be terminated and lose all benefits.

33. Wilson called Mitchell and told her he would try for an early physician's release because he wanted to maintain employment and insurance given his ongoing battle with cancer.

6

34. Dr. Kellar released Wilson with restrictions during his first two weeks back. Those restrictions were for 30 hours of work per week with limited physical activity. Olivastro would not allow Wilson to return to work with any restrictions or limitations, and thus denied him a valid part-time FMLA request.

35. Wilson then waited roughly four weeks for a full release before being allowed to return to work.

36. Upon returning to work, the only direct communication between Wilson and Olivastro was that he must sign and fax the form that he would follow and perform all policies and procedures of Lenscrafters. He did so.

37. On March 9, 2017, Wilson called Olivastro and told her he had been diagnosed with stage four liver cancer, that he would have to take advanced chemotherapy, but that he could still fill his shifts and receive treatments on normal days off.

38. She indicated that would be ok and that he shouldn't worry about it.

39. Wilson received no other direct communication from Olivastro until March 27, 2017, when she sent a text message and asked him to meet her at the store at ten o'clock a.m. on March 30, 2017, which was prior to a meeting of general managers in Tulsa.

40. The purpose of the meeting, Wilson believed, was to receive his 2016 review, which had not been given to him while he was out. When she entered the store, she asked for a minute in his office alone. She then terminated him for "poor performance", asked for his keys, and walked him out.

41. On or about April 17, 2017, Wilson contacted Human Solutions Group for Lenscrafters contesting his termination.

42. On or about May 19, 2017, Wilson received a letter from Lenscrafters upholding his termination.

**COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

43.     The Plaintiff restates and incorporates herein by reference the preceding paragraphs of its Complaint.

44.     Section 12111(a) of the Americans with Disabilities Act, as amended, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

45.     Pursuant to Section 12111(b)(5) of the Americans with Disabilities Act, "discriminate against a qualified individual on the basis of disability" means to: [n]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

46.     As stated herein, and incorporated by reference, Wilson was at all times relevant a qualified individual with a disability.

47.     Wilson, by and through its employees and agents, has discriminated against Wilson due to its failure to accommodate his medical condition, and by its actions terminating Wilson after notice of the recurrence of his cancer diagnoses.  It also discriminated and retaliated against him for his disability him when it issued to him a poor performance review, on the date of hist termination in 2017 for the year prior, rating him a "one" which it purportedly used to justify its termination of him.

48.     The failure to provide an accommodation and rush Wilson back to work prior to being well directly led to the pretext Lenscrafters used to terminate Wilson.

49.     Had Lenscrafters accommodated Wilson's disability rather than terminate him, Wilson would have continued in his employment until it became impossible for him to continue work due to his illness.

50. The termination of Wilson was directly a result of Lenscrafter's failure to comply with its obligations to provide reasonable accommodations to a qualified person with a disability in violation of the Americans with Disabilities Act, and is believed to have been caused, not by performance, but by Lenscrafter's concerns about his disability.

51. As a result of the unlawful discrimination against Wilson, he suffered damages, including, but not limited to loss of income, loss of the attendant employment benefits associated with his employment at Lenscrafters, financial losses, loss of reputation, loss of confidence and self-esteem, mental anguish and emotional distress, and attorney's fees and costs in an amount to be determined at trial.

### COUNT II: VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT

52. The Plaintiff restates and incorporates herein by reference the preceding paragraphs of its Complaint.

53. The acts and omissions alleged herein are in violation of the Arkansas Civil Rights Act, Arkansas Code Annotated § 16-123-107 in that Plaintiff is a qualified person with a disability was subjected to discrimination for her disability due to Lenscrafter's failure to accommodate him and improper termination of him as a result. Upon information and belief, Lenscrafters also retaliated against Wilson due to his disability.

54. As a result of the unlawful discrimination against Wilson, he suffered damages, including, but not limited to loss of income, loss of the attendant employment benefits associated with her employment at Lenscrafters, financial losses, loss of reputation, loss of confidence and self-esteem, mental anguish and emotional distress, and attorney's fees and costs in an amount to be determined at trial.

### COUNT III: DECLARATORY JUDGMENT, INJUNCTIVE, & EQUITABLE RELIEF

55. The Plaintiff restates and incorporates herein by reference the preceding paragraphs of its Complaint.

56. Pursuant to 28 U.S.C. §§2201 and the Arkansas Uniform Declaratory Judgments Act, Arkansas Code Annotated § 16-111-101 *et. seq.*, the Plaintiff requests this Court to declare that, by failing to reasonably accommodate Wilson's disability, and by retaliating against him and terminating him for it, Lenscrafters discriminated against him when it terminated him without providing such accommodation which would have otherwise prevented his termination.

57. The Plaintiff further prays for the issuance of a permanent injunction prohibiting Lenscrafters from otherwise discriminating against qualified individuals with disabilities or failing to make reasonable accommodations for those qualified individuals with disabilities.

### COUNT IV:  RETALIATION AND WRONGFUL TERMINATION
### VIOLATION OF ARKANSAS PUBLIC POLICY AND OF ANTI-RETALIATION PROVISIONS OF THE FALSE CLAIMS ACT, 31 U.S. CODE § 3729-3733

58. The Plaintiff restates and incorporates herein by reference the preceding paragraphs of its complaint.

59. As an alternative, and in addition to the Disability Discrimination claims made herein, Wilson was retaliated against as a protected whistleblower.

60. Arkansas law recognizes exceptions to the at-will doctrine when (1) an employee is discharged for refusing to violate a criminal statute; (2) an employee is discharged for exercising a statutory right; (3) an employee is discharged for complying with a statutory duty; or (4) an employee is discharged for violation of the general public policy of the state.[5]

61. The False Claims Act, 31 U.S. CODE § 3730(h) provides for relief from retaliatory actions to any employee, to make that employee whole, if that employee is discharged, demoted, suspended, threatened, harassed, or discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of efforts to stop one or more violations of the False Claims Act.  It provides to that employee reinstatement, two times back pay, interest on back pay, and compensation for special damages sustained as a result of

---

[5] See *Sterling Drug, Inc. v. Oxford*, 743 S.W.2d 380, 294 Ark. 239 (Ark., 1988).

the discrimination, including litigation costs and reasonable attorneys' fees. Such an action must be brought within three years of the retaliation.

62. Wilson was engaged in such protected activity, as provided by Arkansas Law, and its adopted professional rules applicable to Opticians, by bringing to Lenscrafters' attention the unlawfulness of mandatory referral of patients to the optometrist, also believed to have been owned at least in part by Lenscrafters or its parents or affiliates, located next door to the Lenscrafters location in the Northwest Arkansas Mall.

63. These allegations of self-referral were also protected by Federal Law as cited herein.

64. As a result of the retaliation stated herein for his protected activity, Wilson suffered damages including loss of reputation, back pay, front pay, loss of intendent benefits associated with his position, and emotional distress, among others.

65. Wilson, and through him, his Estate, have suffered damages in an amount to be determined at trial for:

a) Loss of employment compensation past and the benefits associated therewith;

b) Loss of employment compensation future and the benefits associated therewith;

c) Loss of reputation and self-esteem;

d) Mental anguish and emotional distress;

from Lenscrafter's discriminatory acts.

66. The Plaintiff seeks punitive damages up to the limits permitted by law for Defendants' willful and wanton violation of the Americans with Disabilities Act as amended, and the Arkansas Civil Rights Act.

67. The Plaintiff reserves the right to amend and supplement this Complaint should discovery or the applicable facts so warrant.

WHEREFORE, Taylor Wilson, Special Administrator of the Estate of Randy Warren Wilson prays that this Court grant it the following relief against Lenscrafters:

A) For a declaratory judgment declaring that Lenscrafters has violated the rights of Plaintiff, as guaranteed by the Americans with Disabilities Act, as amended, and/or the Arkansas Civil Rights Act, and for or an injunction prohibiting Lenscrafters from future violations of its employees' rights as guaranteed by the Americans with Disabilities Act, as amended, and/or the Arkansas Civil Rights Act;

B) For full compensation for lost benefits including back and front pay, with interest thereupon, suffered to date.

C) For all other compensatory and punitive damages as warranted and proper, including attorneys' fees and litigation expenses.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully Submitted,
Taylor Wilson, Special Administrator of the Estate of
Randy Warren Wilson, Deceased

_____
George M. Rozzell IV, AR Bar No #2008032
Keith, Miller, Butler, Schneider & Pawlik PLLC
224 S 2nd St.
Rogers, AR 72756
p: 479-621-0006
f: 479-631-6890
grozzell@arkattorneys.com