UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TAYLOR WILSON, SPECIAL
ADMINISTRATOR OF THE ESTATE
OF RANDY WARREN WILSON                                                      PLAINTIFF

v.                                  No. 5:18-cv-05217

LUXOTTICA RETAIL NORTH
AMERICA, INC.                                                                DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Luxottica Retail North America, Inc.'s ("Luxottica") motion (Doc. 8) to dismiss or, in the alternative, to stay and compel arbitration and brief (Doc. 9) in support. Plaintiff Taylor Wilson ("Wilson"), Special Administrator of the Estate of Randy Warren Wilson ("Mr. Wilson"), deceased, filed a response (Doc. 11) in opposition. Luxottica filed a reply (Doc. 15) with leave of Court. Luxottica's motion requests that the Court compel arbitration as required by the parties' arbitration agreement and dismiss this action. For the reasons set forth below, the motion will be granted.

**I.    Background**

Wilson filed this action on November 1, 2018 claiming Luxottica terminated Randy Wilson's employment on the basis of a disability in violation of the Americans with Disabilities Act ("ADA") and the Arkansas Civil Rights Act of 1993 ("ACRA"). The complaint further claims that Luxottica terminated Mr. Wilson's employment as retaliation for his status as a protected whistleblower in violation of the False Claims Act, 31 U.S.C. § 3730(h).

Mr. Wilson worked as the General Manager of a Lenscrafter retail store owned and operated by Luxottica. In 2015, Luxottica issued an "Associate Guide" to its employees. The terms of the Associate Guide set out that as a condition of continued employment, Mr. Wilson was

1

required to review and acknowledge the Guide's policies, including a dispute resolution agreement with an arbitration agreement. (Doc. 9-1, p. 5). The arbitration agreement "covers virtually all legal claims arising out of or related to [Mr. Wilson's] employment with Luxottica." (Doc. 9-1, p. 8). The arbitration agreement explicitly includes Americans with Disabilities Act claims and "state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims arising out of or relating to [Mr. Wilson's] employment or the termination of employment." (Doc. 9-1, p. 10). Both parties agreed "to resolve their disputes exclusively through binding arbitration," and the parties agreed that they waived their rights to a trial. (Doc. 9-1, p. 9). The terms of the Associate Guide allowed Mr. Wilson to opt out of the dispute resolution agreement within 30 days of receipt of the Guide. (Doc. 9-1, p. 12). Mr. Wilson did not opt out.

Luxottica argues that the arbitration agreement requires the Court to compel arbitration and dismiss or stay the case. Taylor Wilson contends that the arbitration provision is unenforceable because it lacks consideration and mutuality, that the arbitration agreement is not binding on him because he, Taylor Wilson, was not a party to the original dispute resolution agreement, and that even if the arbitration agreement is valid and enforceable, Luxottica waived its right to compel arbitration.

## II. Analysis

Luxottica's motion to compel arbitration is reviewed under the summary judgment standard. *See Nebraska Mach. Co. v. Cargotec Sols.*, 762 F.3d 737, 741-42 (8th Cir. 2014). The Court views the evidence and resolves all factual disputes in the nonmoving party's favor. *Id.* In determining whether Wilson's claims fall within the terms of the arbitration provision, the Court should not rule on the potential merits of the underlying claims. *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986). The Court should determine first whether there is a valid

arbitration agreement and second, whether the claims fall within the terms of the arbitration provision. *Robinson v. EOR-ARK LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016). If both questions are answered in the affirmative, arbitration must be compelled.

Whether an arbitration agreement is valid and enforceable is governed by state contract law. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009) (explaining that "state contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants"). Under Arkansas law, the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations. *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681, 684 (Ark. 2004). There is no dispute the parties to the agreement were fully competent and the mutual agreement covered legally permissible subject matter. The only elements at issue are legal consideration and mutual obligations.

Wilson argues that there is no valid contract because continued at-will employment cannot constitute consideration.[1] Arkansas law is clear that continued at-will employment can constitute consideration for an employment agreement. *See Barnard v. Townsquare Media, LLC*, No. 12-cv-4110, 2013 U.S. LEXIS 58728, at *6 n.1 (W.D. Ark. April 24, 2013) ("The legal consideration for the agreement was furnished by [the employee's] acknowledgement of the policy as a condition of her employment, as well as the mutual promises stated in the agreement that the parties would arbitrate their disputes."); *see also Sexton Law Firm, P.A. v. Milligan,* 948 S.W.2d 388, 393-94 (Ark. 1997). In *Sexton*, the Arkansas Supreme Court stated:

> If the handbook language [is sufficiently definite to constitute] an offer, and the

---

[1] Wilson's argument that an at-will employment relationship is not contractual is rejected outright. *See Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 756 (8th Cir. 2002) ("Here, although Turner's employment was at-will, under Arkansas law such an employment relationship is contractual in nature although it is not based on any independent contractual right.").

3

offer has been communicated by dissemination of the handbook to the employee, the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contracts for employment, *where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation*. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

948 S.W.2d at 393-94 (emphasis added) (quoting *Crain Indus., Inc. v. Cass*, 810 S.W.2d 910, 914 (Ark. 1991)).

The dispute resolution agreement was among the policies in the Associate Guide distributed to employees and reviewed by Mr. Wilson. The Guide makes clear that Mr. Wilson's continued employment was conditioned on his review and acknowledgement of the policies, including the dispute resolution agreement. (Doc. 9-1, p. 5). The language of the Guide amounts to a unilateral offer: to continue working for Lenscrafters, employees must review and acknowledge each of the policies in the Guide as applicable. After reviewing the policy, Mr. Wilson was free to leave and seek new employment at any time. He was also free to opt out of the dispute resolution agreement within 30 days of receipt of the Guide. Mr. Wilson did neither. By returning to work, he supplied the necessary consideration for the unilateral offer of employment. His retention of employment—with knowledge of the new policies under the Associate Guide— constituted acceptance.

Wilson also argues that there is no valid contract because there is no mutuality of obligation. Relying on *Alltel Corporation v. Rosenow*, 2014 Ark. 375, at *7-9 (2014), Wilson argues that the agreement fails "to provide a mechanism by which both parties could opt-out; instead, the contract only allowed the employee to opt-out." (Doc. 11, p. 5). "[M]utuality of contract means that an obligation must rest on each party to do or permit to be done something in

4

consideration of the act or promise of the other; thus, neither party is bound unless both are bound." *Tyson Foods, Inc. v. Archer*, 147 S.W.3d at 684. However, if an agreement "leaves it entirely optional with one of the parties as to whether or not he will perform his promise his promise would not be binding on the other." *Id.* An agreement to submit all disputes to arbitration generally satisfies the mutuality of obligation requirement under Arkansas law. *Barnard* 2013 U.S. LEXIS 58728, at *6-7 n.1.

This case is distinguishable from *Rosenow*. There, language in the arbitration agreement allowed the employer to forego arbitration at any time without consequence. 2014 Ark. 375, at *8-9. The employee had no mechanism for avoiding arbitration, so the court determined that there was no mutual obligation to arbitrate. *Id.* In this case, the 30-day opt-out period merely allows employees to opt-out of the agreement. After 30-day period expires, both employee and employer are equally obligated to arbitrate all claims without exception. The opt-out provision has no relevance to the parties' binding obligation to arbitrate. Because both parties agreed to arbitrate their claims, the mutual obligation element is satisfied, and the agreement is valid under Arkansas law.

Wilson argues that even if there is a valid contract, it is unenforceable insofar as he is not bound by the arbitration agreement because he was not a party to the original agreement, which does not purport to be binding on Mr. Wilson's estate, heirs, or beneficiaries. Though Luxottica argues that equity justifies binding Wilson as a nonsignatory, this issue is resolvable as a matter of law. Taylor Wilson filed this action as Special Administrator of Mr. Wilson's estate. Taylor Wilson does not assert his own independent claims against Luxottica, but only Mr. Wilson's estate's claims against Luxottica. For contractual purposes in Arkansas, Mr. Wilson's estate is Mr. Wilson. *See McDonald v. Pettus*, 988 S.W.2d 9, 15-16 (Ark. 1999) (explaining that the estate

and the deceased are the same party in a contract dispute). Because Mr. Wilson's estate is a party to the arbitration agreement with Luxottica, the valid arbitration agreement is enforceable against the estate, and by extension against its Special Administrator.

Because the arbitration agreement is valid and enforceable, the Court must next determine whether the claims in this lawsuit fall within the terms of the arbitration provision. Arbitration provisions are construed liberally, with doubts resolved in favor of arbitration unless it can be said "'with positive assurance' that the arbitration clause cannot be construed to encompass the dispute." *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) (quoting *Unison Co., Ltd. v. Juhl Energy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)). Wilson brings claims under the ADA, ACRA, and the False Claims Act for unlawful termination of Mr. Wilson's employment. His ADA claim is clearly covered by the arbitration agreement because the agreement explicitly references ADA claims. Moreover, the arbitration agreement explicitly encompasses "all other federal or state legal claims arising out of or relating to [Mr. Wilson]'s employment or the termination of employment." (Doc. 9-1, p. 10). There is no question each of the claims raised in the complaint relates to Mr. Wilson's employment or the termination of his employment. Every claim within this lawsuit falls within the terms of the arbitration provision.

Wilson argues that even if there is a valid and enforceable arbitration agreement covering these claims, Luxottica waived its right to compel arbitration. Unless the parties have clearly and unmistakably provided otherwise, issues of procedural arbitrability such as whether the right to compel arbitration has been waived are for the arbitrator to decide. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871–72 (8th Cir. 2004) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85 (2002)). The arbitration agreement explicitly recognizes that disputes about enforceability are for the Court to decide (Doc. 9-1, p. 10), and the Court has decided that the

6

arbitration agreement is enforceable. The agreement contains no similar provision that would reserve matters of procedural arbitrability for the Court to decide. Wilson's arguments concerning waiver must be raised, if at all, in arbitration.

The arbitration agreement is valid and enforceable and each of Wilson's claims fall within the scope of the agreement. Arbitration must be compelled. Because all claims raised in this lawsuit are subject to arbitration and will be resolved by that arbitration, the weight of authority supports dismissal of the action following entry of an order compelling arbitration. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011) (holding that under a judicially-created exception to section 3 of the Federal Arbitration Act, a court may, in its discretion, dismiss an action in favor of arbitration where it is clear that the entire controversy will be resolved by arbitration); *accord Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

### III. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 8) to dismiss and compel arbitration is GRANTED. The parties are ORDERED to submit this dispute to arbitration consistent with the terms of their agreement, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 27th day of March, 2019.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE

7